# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 24-268 |
| WILLIE SINGLETARY | : | |

## GOVERNMENT'S PLEA MEMORANDUM

**I.      INTRODUCTION**

Defendant Willie Singletary, through counsel, has agreed to plead guilty in the Eastern District of Pennsylvania to Counts One through Four of an information, waiving prosecution by indictment, charging him with conspiracy to commit robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951 (Count One); robbery which interferes with interstate commerce, and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Two); using, carrying and brandishing a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Three); attempted robbery which interferes with interstate commerce, and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Four); and not to contest forfeiture as set forth in the notice of forfeiture charging criminal forfeiture under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), all arising from the defendant's conspiracy to commit, and participation in, an armed robbery and attempted robbery of businesses and individuals who affected interstate commerce.

The defendant is pleading guilty pursuant to a plea agreement. A copy of the signed plea agreement is attached as Exhibit A.

## II. ESSENTIAL ELEMENTS OF THE OFFENSES

### A. Conspiracy to Commit Hobbs Act Robbery

To prove conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), the government must prove beyond a reasonable doubt that:

1. That two or more persons agreed to commit an offense against the United States, as charged in the indictment;

2. That the defendant was a party to or member of that agreement;

3. That the defendant joined the agreement or conspiracy knowing of its objectives to commit an offenses against the United States and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that Hobbs Act Robbery and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal(s) or objective(s), to commit an offense(s) against the United States; and

4. That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

Third Circuit Model Criminal Jury Instructions § 6.18.1951 and 6.18.371A et seq.

### B. Hobbs Act Robbery

To prove the substantive offense of Hobbs Act Robbery, in violation of 18 U.S.C. 1951(a), the government must prove beyond a reasonable doubt that:

1. The defendant obtained or took the personal property of another, or from the presence of another;

2. The defendant took this property against the victim's will by means of actual or threatened force, violence, or fear of injury, whether immediately or in the future, to his person or property, or property in his custody; and

3. As a result of the defendant's actions, interstate commerce, or any item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.[1]

Third Circuit Model Criminal Jury Instructions § 6.18.1951.

C. Attempted Hobbs Act Robbery

To prove that the defendant attempted to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, the government must prove beyond a reasonable doubt that:

1. The defendant intended to commit the crime of Hobbs Act Robbery;

2. The defendant performed an act(s) constituting a substantial step(s) toward the commission of Hobbs Act Robbery which strongly corroborates or confirms that (name) intended to commit that crime.

Model Third Circuit Jury Instructions § 7.01

D. Aiding and Abetting Hobbs Act Robbery

To prove that the defendant aided and abetted the commission of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, the government must prove beyond a reasonable doubt that:

---

[1] The Third Circuit in *United States v. Powell*, 693 F.3d 398, 402 (3d Cir. 2012) wrote:

> Consistent with the Court's interpretation of the Hobbs Act's "broad language," *Stirone*, 361 U.S. at 215, we have stressed that "proof of a *de minimis* effect on interstate commerce is all that is required" for conviction under the Hobbs Act. *Walker*, 657 F.3d at 180 (quoting *United States v. Urban*, 404 F.3d 754, 766 (3d Cir. 2005)) (internal quotation marks omitted). Moreover, the effect may be potential, not actual. *United States v. Shavers*, No. 10-2790, 693 F.3d 363, 2012 U.S. App. LEXIS 18108 at 22 (3d Cir. Aug. 27, 2012); *United States v. Haywood*, 363 F.3d 200, 209-10, 45 V.I. 800 (3d Cir. 2004); *see also Urban*, 404 F.3d at 766-67. We have noted this standard is in accord with the overwhelming weight of authority of our sister circuits. *Urban*, 404 F.3d at 765 n.3. We have also rejected challenges to this standard under the commerce clause jurisprudence outlined in *United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995), and *United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000), holding that, because the Hobbs Act contains a jurisdictional element and criminalizes the "fundamentally economic" crimes of robbery and extortion, violations of the Act have a substantial effect on interstate commerce in the aggregate, and the government need not prove a substantial effect in each individual case. *Shavers*, No. 10-2790, 2012 U.S. App. LEXIS 18108 at 12, *Walker*, 657 F.3d at 179-80; *Urban*, 404 F.3d at 766; *United States v. Clausen*, 328 F.3d 708, 710-11, 60 Fed. Appx. 402 (3d Cir. 2003).

1. The principal committed the offenses of Hobbs Act robbery by committing each of the elements of the offense;

2. The defendant knew that the offense charged were going to be committed or were being committed by the principal;

3. The defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the offenses charged and with intent that the principal commit those offense; and

4. The defendant performed an act in furtherance of the offense committed by the principal.

Third Circuit Model Criminal Jury Instructions § 7.02.

E. <u>Using, Carrying and Brandishing a Firearm</u>

To prove that the defendant used, carried and brandished a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1), the government must prove beyond a reasonable doubt that:

1. The defendant committed the crime of violence, that is, Hobbs Act robbery, as charged in the Indictment; and

2. That during and in relation to the commission of that crime, the defendant knowingly used, carried and brandished a firearm.

Third Circuit Model Criminal Jury Instructions § 6.18.924A. "For purposes of this subsection, the term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(iii)(D)(4). This charge may also be proven under an aiding and abetting theory.[2]

---

[2] "[T]he §924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that

**III.     PLEA AGREEMENT**

The defendant has agreed to plead guilty to all four counts of the information pursuant to a plea agreement. The plea agreement includes the following stipulations that are not binding upon the Court or the United States Probation Office:

- The parties agree and stipulate that the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under U.S.S.G. § 3E1.1(a).

- The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under U.S.S.G. § 3E1.1(b).

In the plea agreement, the defendant has agreed that he may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. The defendant voluntarily and expressly waived all rights to appeal or collaterally attack his conviction, sentence or any other matter relating to this prosecution. The defendant has also acknowledged that the government will bring to the Court's attention all facts

---

late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. As even the Government concedes, an unarmed accomplice cannot aid and abet a §924(c) violation unless he has 'foreknowledge that his confederate will commit the offense with a firearm.' For the reasons just given, we think that means knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Rosemond v. United States*, 134 S. Ct. at 1249-50 (internal citations omitted); *see also United States v. Styles*, 659 F. App'x. 79 (3d Cir. 2016) (non-precedential) (discussing evidence establishing defendant's advance knowledge) and Instruction 7.02 (Accomplice Liability: Aiding and Abetting (18 U.S.C. § 2(a))).

relevant to sentencing including relevant conduct, and any evidence relating to the character and any criminal conduct, of the defendant. The defendant has also agreed to pay a fine, restitution and special assessment as directed by the Court.

IV. **MAXIMUM PENALTIES**

The statutory maximum penalty on Count One (conspiracy to commit robbery which interferes with interstate commerce), 20 years' imprisonment, a $250,000 fine, a 3-year period of supervised release, and a $100 special assessment; on each of Counts Two and Four (robbery, and attempted robbery, which interferes with interstate commerce, and aiding and abetting), 20 years' imprisonment, a $250,000 fine, a 3-year period of supervised release, and a $100 special assessment; and on Count Three (using, carrying and brandishing a firearm during and in relation to a crime of violence, and aiding and abetting), lifetime imprisonment, a seven-year mandatory minimum term of imprisonment consecutive to each other and to any other sentence of imprisonment imposed, a 5-year period of supervised release, a $250,000 fine, and a $100 special assessment.

Total Maximum and Mandatory Minimum Sentence: lifetime imprisonment, a mandatory minimum seven years' imprisonment consecutive to any other sentence of imprisonment imposed, a 5-year period of supervised release, a $1,000,000 fine, and a $400 special assessment.

V. **FACTUAL BASIS FOR THE PLEA**

If these cases were to proceed to trial, the government would prove each element of the crimes charged beyond a reasonable doubt. The government would prove the following:

Robbery of Happy Laundromat: On or about November 20, 2019, the defendant, along with Shaquan Brown and Sahir McCorkle, agreed to rob the Happy Laundromat located in Philadelphia, Pennsylvania. At approximately 7:30 a.m. that morning, the defendant, along with

6

Brown and McCorkle, went to the laundromat, each armed with firearms. These three men pushed the victim store employee into the store, and pointed their guns at him. The men forced the victim to the basement of the laundromat. At least one of these three men repeatedly punched the victim, and the men pointed their guns at him, while the victim screamed for help. One of the offenders reached into the victim's pocket and took his keys, and tied the victim's hands together behind the victim's back. McCorkle stayed on the first floor with the victim, and destroyed the camera system while the defendant and Brown went upstairs to the second and third floors together. The defendant repeatedly punched a second victim, who was upstairs. At trial, testimony would show that this second victim was a developmentally challenged male, who owned the laundromat. Brown assaulted a third victim, who was female and who was also upstairs. The men stole approximately $30,000, which was to be used to renovate the business. The Happy Laundromat is a business engaged in interstate commerce.

Attempted Robbery of A.H.: The defendant provided information to Shaquan Brown about an individual named A.H. whom the defendant believed had substantial amounts of cash. While the defendant was in prison, he spoke to Shaquan Brown regularly by phone. During these calls, the defendant told Brown about A.H., that A.H. owned multiple stores, that A.H. had cash, and told Brown to put a tacker on A.H.'s vehicle to figure out where A.H. lived. The defendant told Brown that A.H. had almost half a million dollars, which the defendant believed was proceeds from A.H.'s business. Based on this information, Brown placed a tracker on A.H.'s car and located A.H.'s home on December 30, 2019. Brown confirmed for the defendant that he located A.H.'s home. The defendant directed Brown that Brown should not be afraid to get "grimy" and that "nothing is off limits," meaning that the defendant was instructing Brown to use force and violence in order to rob A.H. They discussed that Brown should do this "like the laundromat." Based upon

their history of committing robberies, and coupled with the defendant's instructions to use force and violence during the robbery, the defendant has advanced knowledge that Brown would use certain tools for the robbery including, crowbars, zip ties, and a firearm. A.H. was the owner of a business that engaged in interstate commerce, and stored business proceeds in the residence.

As discussed with the defendant, in the morning of January 3, 2020, Shaquan Brown and another individual attempted to break into A.H.'s home located in Downington, Pennsylvania. The owner of the residence was alerted via a home security system application on her smart phone that motion was detected at the residence, which was unoccupied at the time, and called the police. The surveillance video shows two black males in dark clothing attempting to pry open a window at the residence. Officers from Uwchlan Township Police Department responded within minutes, and when they arrived, they saw two black men in black hooded sweatshirts and black pants attempting to open a window at the home. Upon seeing the officers, Brown and the other individual fled on foot into woods surrounding the residence. As he fled, Brown dropped a firearm on the property of the residence and then picked it up. Brown then fled into the woods where officers apprehended him while he was running through a creek. Brown was arrested with a black North Face backpack, a pair of eyeglasses, car keys, a chrome and black Smith & Wesson, .40 caliber pistol with an obliterated serial number, loaded with 10 rounds of ammunition and 1 round in the chamber, black zip ties, duct tape, and an Apple. The gun was found inside the backpack, which officers searched incident to Brown's arrest.

## VI. CONCLUSION

Respectfully, the government submits these facts are sufficient to provide a factual basis for the guilty plea.

                                        Respectfully submitted,

                                        JACQUELINE C. ROMERO
                                        United States Attorney

                                        */s/ J. Jeanette Kang*
                                        J. JEANETTE KANG
                                        ANTHONY J. CARISSIMI
                                        Assistant United States Attorneys

Date: September 12, 2024

# CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the Government's Change of Plea Memorandum served by electronic mail on the following:

Thomas Dreyer, Esq.

*/s/ J. Jeanette Kang*
J. JEANETTE KANG
Assistant United States Attorney

Date:  September 12, 2024