IN THE UNITED STATES DISRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Action No. 24-268-001 |
| | : | |
| vs. | : | |
| | : | |
| WILLIE SINGLETARY | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Willie Singletary, by his attorney, Thomas A. Dreyer, Esquire, hereby respectfully submits a Sentencing Memorandum setting forth all the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives contained in 18 U.S.C. Section 3553(a). He herein contends that a term of imprisonment of 120 months is sufficient but not greater than necessary to comply with the provisions of Section 3553(a).

On October 11, 2024, Mr. Singletary pleaded guilty to an Information charging him with Conspiracy to commit robbery which interferes with interstate commerce in violation of 18 U.S.C. Section 1951(a), Robbery which interferes with interstate commerce in violation of 18 U.S.C. Sections 1951(a) and 2, Using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. Sections 924(c)(1)(A)(ii) and 2 and Attempted robbery which interferes with interstate commerce in violation of 18 U.S.C. Sections 1951(a) and (2).

Sentencing is scheduled for January 6, 2025.

### Application of the Statutory Sentencing Factors to the Instant Case

The Court must consider the following factors in determining what length of sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing:

1. **The Nature and Circumstances of the Offenses and the History and Characteristics of The Offender**

   **(A)  Nature and Circumstances of the Offenses**

   Mr. Singletary's criminal conduct is outlined in Paragraphs 11-22 of the Revised Presentence Investigation Report ("PSR").

   **(B)  History and Characteristics of Mr. Singletary**

   1.  Family

   Mr. Singletary was born on August 6, 1991 and he is 33 years of age.  He was born and raised in Southwest Philadelphia.  He is divorce and has four children: Jade (3/27/09), Jaylin (10/14/16), Jahsi (11/24/19) and Harmony (3/27/20).

   2. Education

   Mr. Singletary graduated from Davidson High School in Media, Pennsylvania in June 2008.  He has no other formal education.

   3. Employment

   Mr. Singletary's work history is set forth in Paragraphs 105-109 of the PSR.

   4  Substance Abuse

   Mr. Singletary smoked marijuana on a daily basis starting when he was 15. He did not use any other drugs.  He did not use alcohol of any kind because he hates it.

   5. Health

   Mr. Singletary is in good physical and mental health.  He is not currently seeing or treating with any physicians, psychiatrists of psychologists.  He uses an inhaler for his asthma.

-2-

6. Programs

Mr. Singletary in currently in a Pennsylvania state prison where he is the process of completing a one-year Violence Prevention Program and a four-month Therapeutic Communities Program.

## 2.  The Need for the Sentence Imposed to Promote Certain Statutory Objectives

### (A)  To reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses

A jail term of 120 months clearly meets the objectives of reflecting the seriousness of the offenses, promoting respect for the law and providing just punishment for the offenses.

### (B)  To afford adequate deterrence to criminal conduct

A jail term of 120 months is sufficient to achieve the goals of general deterrence and specific deterrence.

### (C)  To protect the public from further crimes of the defendant

The goal of protecting the public from further crimes committed by Mr. Singletary will be achieved by a jail term of 120 months.

### (D)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Mr. Singletary intends to obtain a commercial driver's license and a real estate seller's license during his imprisonment.

## 3.  The Kinds of Sentences Available

A sentence of imprisonment is available.  18 U.S.C. Section 3581.  A fine is available.  18 U.S.C. Section 3571.  Mr. Singletary is represented by court-appointed counsel.

### 4. The Sentencing Range Established by the Sentencing Commission

The PSR calculates the Guideline Range of Imprisonment at 204 to 234 months as follows:

A.   Total Offense Level – 26

B.   Criminal History Category VI

C.   Beginning range – 120 to 150 months

D.   Add 84 consecutive months for the Section 924(c) charge

E.   Guideline Range of Imprisonment – 204 to 234 months

See Paragraphs 29-67 and 114-116 of the PSR.

Mr. Singletary submitted objections to this calculation in which he contends that, although he should receive a two-level physical restraint increase pursuant to U.S.S.G. Section 2B3.1(b)(4)(B), he should not receive a four-level abduction increase pursuant to U.S.S.G. Section 2B3.1(b)(4)(A) as outlined in Paragraph 36 of the PSR.   See the true and correct copy of the Addendum to the PSR which is attached hereto and incorporated by reference herein as Exhibit "A".

Mr. Singletary herein corrects a factual error in the government's response to his objection to the four-level abduction enhancement.   It states that he moved Z.Z. from the sidewalk outside of the Happy Laundromat into the laundromat on the morning of the robbery. To the contrary, Z.Z. testified at Shaquan Brown's trial he "was just inside the door" of the laundromat at 7:00 AM; that he "was sweeping the floor" and "trying to wipe down the washers" (these items are obviously inside the business); that, while he was trying to clean, "this one person entered the store and greeted me"; and "then he started to push me further into

-4-

the store". See the true and correct redacted copies of Pages 188-189 of the testimony given by

Z.Z. on April 8, 2024 which are attached hereto and incorporated by reference herein

collectively as Exhibit "B". Mr. Dreyer was unaware of this testimony until the government

recently emailed Mr. Brown's trial transcripts to him on December 20, 2024.

Taking into account his objection to the PSR, Mr. Singletary calculates the correct

range as follows:

A.   Total Offense Level – 24

B.   Criminal History Category VI

C.   Beginning Range – 100 to 125 months

D.   Add 84 consecutive months for the Section 924(c) charge

E.   Guideline Range of Imprisonment – 184 to 209 months

The government objects to Paragraph 35 of the PSR giving Mr. Singletary a two-

level bodily injury enhancement pursuant to U.S.S.G. Section 2B3.1(b)(3)(A). It contends that

he should instead receive a four-level serious bodily injury increase pursuant to U.S.S.G. Section

2B3.1(b)(3)(B). Mr. Singletary concurs with Paragraph 35 of the PSR. See Exhibit "A".

## 5.  Pertinent Policy Statement

A pertinent Policy Statement is U.S.S.G. Section 5G1.3(d). See Section 8 of this

memorandum.

## 6.  The Need to Avoid Unwarranted Sentencing Disparities

There are no unwarranted sentencing disparities.

## 7.  The Need to Provide Restitution to Any Victims of the Offense

Mr. Singletary owes restitution of $27,885.00 to the victims of the Happy

Laundromat.  See Paragraph 128 of the PSR.

## 8. Request for a Partially Concurrent Jail Sentence

On January 27, 2021, Mr. Singletary was arrested and charged with various offenses in Philadelphia, Pennsylvania.  On November 30, 2023, he pleaded guilty to Robbery and Criminal Conspiracy to Common Robbery in the Philadelphia County Court of Common Pleas.  On December 7, 2023, he was sentenced to an aggregate term of imprisonment of 10 to 30 years.  See Paragraph 64 of the PSR.  He is currently serving this lengthy sentence in the State Correctional Institution located in Dallas, Pennsylvania.

The general rule of thumb for criminal cases involving violence in Pennsylvania is that the defendant must serve at least 85% of his maximum sentence before he will be paroled by the Pennsylvania Parole Board.  If this holds true for Mr. Singletary, he will have to serve 25.5 years before he is paroled in the Philadelphia case; 25.5 years from the arrest date of January 7, 2021 is July 27, 2046.

According to 18 U.S.C. Section 3584(a), if a jail term is imposed on a defendant who is already subject to an undischarged term of imprisonment, like Mr. Singletary, the terms may run concurrently or consecutively and multiple jail terms imposed at different times, like in this situation, run consecutively unless the court orders that the terms are to run concurrently.

According to U.S.S.G. Section 5G1.3(d), in any case involving an undischarged term of imprisonment, the sentence for the instant case may be imposed to run concurrently, partially concurrently or consecutively to the prior undischarged term in order to achieve a reasonable punishment for the instant offense.  The factors considered in achieving a reasonable incremental punishment for the instant offense and avoiding an unwarranted disparity are

-6-

outlined in Application Note 4(A) as follows:

(i)    The factors set forth in 18 U.S.C. Section 3584 (referencing 18 U.S.C. Section 3553(a))

(ii)    The type and length of the prior undischarged sentence – it is a parolable sentence and its length is 30 years.

(iii)    The time served on the undischarged sentence runs from January 27, 2021 to January 6, 2025 (almost 4 years) and the time likely to be served on it before release runs from January 6, 2025 to July 27, 2046 (more than 21 years).

(iv)    The prior undischarged sentence was imposed in a state court, and not a federal court.

(v)    Any other circumstance relevant to the determination of an appropriate sentence for the instant offense – he pleaded guilty pre-indictment as outlined in Section 9 of this memorandum.

According to Application Note 4(B), a partially concurrent sentence may achieve most appropriately the desired result in some cases and to impose such a sentence, the court may provide in the Judgment and Commitment that the sentence for the instant offense shall commence on the earlier of (i) when the defendant is released from the prior undischarged sentence or (ii) on a specified date.

## 9.  Requests for a Downward Variance

A.  Because Mr. Singletary waived indictment and pleaded guilty to an Information, the government did not have to go to the time, trouble and expense of presenting witnesses and evidence before a grand jury in order to obtain an indictment and before a trial jury in order to obtain a conviction.  This decision permitted the government to direct its resources to other cases.

B.  The victims testified at Mr. Brown's jury trial in April 2024.  By pleading guilty, Mr. Singletary relieved them of the stress and anguish of having to testify a second time

before a different jury at a different trial.

Mr. Singletary requests that the Court take these facts into consideration by granting him leniency.

## Conclusion

The Court should consider every convicted person as an individual and every case as a unique study in human failings which sometimes mitigate and sometimes magnify the crime and punishment to ensue. *United States v. Gunter*, 527 F.3d 282, 285 (3d Cir.2008); *United States v. Castro-Valenzuela*, 304 Fed.Appx. 986, 989 (3d Cir.2008). Mr. Singletary respectfully requests a term of imprisonment of 120 months running partially concurrently with the state sentence he is currently serving. He also requests that the Court recommends to the U.S. Bureau of Prisons that it places him at a facility as close as possible to Philadelphia, Pennsylvania.

/s/ **Thomas A. Dreyer**
Thomas A. Dreyer, Esquire
30 Running Brook Road
Glen Mills, PA  19342
610-742-7883
Attorney for Defendant Willie
    Singletary

Dated:  December 31, 2024

EXHIBIT "A"

RE: WILLIE SINGLETARY

## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### UNITED STATES V. WILLIE SINGLETARY, DKT. 2:24CR00268-001

### REVISIONS

Subsequent to the disclosure of the draft presentence investigation, edits were made to paragraph 13. The changes did not impact the guideline calculations as stated in the draft presentence investigation report.

### OBJECTIONS

### By the Government

Paragraph 35: The government submitted the following objection:

*The government objects to the application of the "bodily injury" adjustment under USSG 2B3.1(b)(3)(A) in PSR Paragraph 35. This is regarding the Happy Laundromat robbery. The victims here suffered serious bodily injury under USSG 2B3.1(b)(3)(b). "Serious bodily injury" is defined under USSG 1B1.1, application note 1(M), to mean "injury involving extreme physical pain ... or requiring medical intervention such as ... hospitalization." Here, defendants were responsible for viciously beating three individuals, including Z.Z., who testified at trial that his eyes were "swollen" and "lopsided," that he experienced pain "all over" and he had to go to the hospital:*

```
Q Were you injured?
A Yes, my eyes were totally swollen. My eyes were lopsided, one
up, one down. I was hurting all over.
...
Q And did the police come?
A Yes, they came.
Q Sir, did you seek any medical attention for your
injuries?
A Yes, they took me to the hospital.
Q All right. Were you treated by a doctor?
A Yes.
```

*The government also submits that Z.Z.'s nephew, S.H. (who is also a victim), suffered injuries that required hospitalization. As noted in the PSR, at Paragraph 24, S.H. had to receive emergency medical care.*

### Response by the Defendant

Paragraph 35 of the PSR indicates that Mr. Singletary should receive a two-level increase because, during the Happy Laundromat robbery, the assailants caused bodily injury to the victims by punching Z.Z. and placing him in a choke hold and by also beating Z.Z. 's nephew causing bleeding

## RE: WILLIE SINGLETARY

and injuries that required medical treatment pursuant to U.S.S.G. Section 2B3.l(b)(3)(A). The government objects; it contends that he should receive a four-level enhancement for causing serious bodily injury to the victims pursuant to U.S.S.G. 2B3.l(b)(3)(E). Mr. Singletary agrees that he should receive the two-level increase.

Application Note 1 to U.S.S.G. Section 2B3.1 states that "bodily injury" and "serious bodily injury" are defined in the Commentary to U.S.S.G. Section 1B 1.1 which indicates that:

"Bodily injury" means any significant injury such as an injury that is painful and obvious or is of a type for which medical attention ordinarily would be sought: and,

"Serious bodily injury" means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ or mental faculty or requiring surgery, hospitalization or physical rehabilitation.

The government has the burden of proving facts which support a guidelines enhancement. *United States v. McDowell,* 888 F .2d 285, 291 (3d Cir.1989). It cites the following evidence in support of its objection:

A. Z.Z. testified at the Shaquan Brown jury trial that his eyes were totally swollen; his eyes were lopsided, one up and one down; he was hurting all over; and the police took him to the hospital where he was treated by a doctor.

B. According to Paragraph 24 of the PSR, the injuries suffered by S.H. required emergency medical care.

The government has failed to carry its burden of proof. First, although Z.Z. was hurting all over, there is no evidence that he was in extreme physical pain at any time. Second, although his eyes were lopsided, there is no evidence that he suffered a protracted impairment of the function of his eyes. Third, although Z.Z. and S.H. were treated in a hospital emergency room, there is no evidence that they were hospitalized; *see United States v. Green,* 664 Fed. Appx. 193 (3d Cir.2016) (the victim was hospitalized for several days). Fourth, there is no evidence that either man suffered protracted impairment of the function of a bodily member, organ or mental faculty or required surgery or physical rehabilitation. Fifth, there is no evidence that either man was stabbed or required stitches; *see United States v. Montalban,* 604 Fed. Appx. 100 (3d Cir.2015) (the victim received nine stitches for three puncture wounds sustained to his face when attacked with a sharpened plastic shank). Sixth, there is no evidence that either man suffered a broken bone; *see Green,* 664 Fed. Appx. at 201; *see also United States v. Caraballo,* 88 F.4th 239,249 (3d Cir.2023) (the victim suffered a broken jaw as well as three stab wounds in the chest). To the contrary, the government's evidence indicates that the victims received significant injuries which were painful, obvious and of a type for which medical attention would ordinarily be sought. As a result, Mr. Singletary should receive the two-level bodily injury enhancement but not the four-level serious bodily injury increase.

## RE: WILLIE SINGLETARY

### Response by U.S. Probation Officer

The probation officer concurs with defense counsel and differentiates between going to the hospital and "hospitalization." The *Guidelines Manual* is clear that a bodily injury may require "medical attention" without rising to the level of "serious bodily injury." Although Z.Z. and his nephew were treated by medical professionals, there is no indication that either victim was admitted for treatment that would elevate the injuries to the category of "serious bodily injury."

### By the Defendant

Paragraphs 36, 41, 49, 51, 55, and 116: The defendant submitted the following objection:

*Paragraph 36 of the PSR indicates that Mr. Singletary should receive a 4-level increase because two victims were abducted to facilitate the commission of the offense at the Happy Laundromat pursuant to U.S.S.G. Section 2B3.1(b)(4)(A). To the contrary, he should receive a 2-level increase because these victims were physically restrained to facilitate the commission of this offense pursuant to U.S.S.G. Section 2B3.1(b)(4)(B).*

*According to U.S.S.G Section 2B3.1(b)(4): (A) If any person was abducted to facilitate commission of the offense or to facilitate escape, increase by 4 levels; or (B) If any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels.*

*The Commentary states that this guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound or locked up. Commentary 1(A) to U.S.S.G. Section 1B1.1 defines 'abducted' as a victim being forced to accompany the offender to a different location; a bank robber forcing a teller from the bank into a getaway car is given as an example of an abduction.*

*According to Paragraph 12 of the PSR, the Happy Laundromat occupied the first floor of the building in Philadelphia. Z.Z., his wife and his nephew, who operated the laundromat, lived in a residence above the business.*

*Paragraph 36 states: "During the robbery, Z.Z. was restrained with zip ties, forced to the back of the laundromat in a choke hold, and then dragged to the cash register. Later, when his wife attempted to leave the apartment and reach Z.Z. downstairs, she was forced back to the bedroom. Since the victims were abducted to facilitate commission of the offense, the offense level increases by four levels, pursuant to USSG [Section] 2B3.1(b)(4)(A)."*

*It is clear that all this conduct took place inside a single building containing the laundromat and the apartment: all the conduct involving Z.Z. occurred on the first floor inside the laundromat and all the conduct involving his wife happened on the second floor inside the apartment. There is a circuit split over the meaning of 'abducted' in Section 2B3.1(b)(4)(A).*

*Some circuits hold that abduction enhancement applies to defendants who force victims to move around within a single building. United States v. Reynos, 680 F.3d 283, 290-91 (3d*

RE: WILLIE SINGLETARY

*Cir.2012); United States v. Johnson, 619 F.3d 469,474 (5th Cir.2010); United States v. Osborne, 514 F.3d 377, 389-90 (4th Cir.2008); United States v. Archuleta, 865 F.3d 1280, 1285-88 (10th Cir.2017). Other circuits hold that movement of victims within a single location does not constitute movement to a different location for purposes of the 4-level increase. United States v. Whatley, 719 F.3d ~206, 1221-23 (11th Cir.2013); United States v. Hill, 963 F.3d 528, 535-36 (6th Cir.2020) (the phrase "different location" refers to a place separate from the store or bank being robbed); United States v. Eubanks, 593 F.3d 645, 652-54 (7th Cir.2010).*

*Although Mr. Singletary concedes that he should receive the 2-level physical restraint enhancement, he hereby contests the application of the 4-level abduction increase and intends in the future to seek appellate review of this issue.*

*Paragraph 41 indicates that the Adjusted Offense Level (Subtotal) is 27. To the contrary, it is 25.*

*Paragraph 49 indicates that the Greater of the Adjusted Offense Levels is 27. To the contrary, since the Adjusted Offense Level for each of the two Groups is 25, the relevant offense level is 25.*

*Paragraph 51 indicates that the Combined Adjusted Offense Level is 29. To the contrary, it is 27.*

*Paragraph 55 indicates that the Total Offense Level is 26. To the contrary, it is 24.*

*Paragraph 116 indicates that, based on a Total Offense Level of 26 and Criminal History Category VI, the Guideline Range of Imprisonment is 120 to 150 months, plus 84 months on Count Three, for a total range of 204 to 234 months. To the contrary, based on a Total Offense Level of 24 and Criminal History Category VI, the correct starting range is 100 to 125 months and by adding 84 months for Count Three, the correct total range is 184 to 209 months.*

## Response by the Government

The government agrees with the Probation Office's application of the abduction enhancement, in Paragraph 36. As the defendant admitted during the plea hearing, he and his co-defendants forced—at gunpoint—the victim to move from the sidewalk outside of the Happy Laundromat, into the laundromat, then to the back of the laundromat. The Third Circuit has held that when a defendant moves a victim from the sidewalk into a building, or from one part of a building to another, that is sufficient to meet the elements of the "abduction" enhancement under USSG 2B3.1(b)(4)(A). *See e.g., United States v. Reynos*, 680 F.3d 283, 291 (3d Cir. 2012) (defendant's forcing robbery victim from bathroom in the rear of store to the cash register constituted abduction under 2B3.1(b)(4)(A)); *United States v. Laws*, 2023 WL 371393, at *3 (3d Cir. Jan. 24, 2023) (holding that the District Court's application of the abduction enhancement was appropriate where the defendant forced victims to go from sidewalk into a store). Regardless of whether other Circuits have interpreted this provision differently, we are in the Third Circuit now, and there is clear

## RE: WILLIE SINGLETARY

precedent in the Third Circuit that has held that a defendant's forcing a victim to move from one part of a building to another constitutes abduction.

### Response by U.S. Probation Officer

The probation officer concurs with the government. The definition of "abducted" is found at USSG §1B1.1 which reads, "'Abducted' means that a victim was forced to accompany an offender to a different location." In *U.S. v. Reynos,* the Third Circuit identified three predicates for applying the enhancement. *First, the robbery victims must be forced to move from their original position; such force being sufficient to permit a reasonable person an inference that he or she is not at liberty to refuse. Second, the victims must accompany the offender to that new location. Third, the relocation of the robbery victims must have been to further either the commission of the crime or the offender's escape.* In this case, all three predicates are satisfied multiple times. Specifically, Z.Z. was moved at gun point from outside the laundromat to the interior of the building. Z.Z. was forcibly moved from the back of the business to the front where the cash register is located. Finally, Z.Z.'s wife was dragged to her bedroom after she attempted to go downstairs. In each incident the abductee was accompanied by at least one of the robbers and was forcibly moved for the express purpose of furthering the robbery. As such, the enhancement is appropriately applied.

Respectfully Submitted,

Manuel A. Jimenez
Chief U.S. Probation Officer

**Carolyn DeMayo**
Digitally signed by Carolyn DeMayo
Date: 2024.12.26 12:29:38 -05'00'

By:    Carolyn M. DeMayo
U.S. Probation Officer

Approved: _____
Michael Lott
Supervising U.S. Probation Officer

Digitally signed by
Jacqueline S. Widmeier
Date: 2024.12.26 13:26:43
-05'00'

EXHIBIT "B"

Mr.          - Direct                          188

1    Q    Okay, sir, what are we looking at here?

2    A    Okay.  So this is the staircase to get to the

3    second floor.

4    Q    And that's where your residence is, correct?

5    A    Well, when you take this staircase you get to the

6    second floor.  It is living quarters, but I myself

7    live on the third floor.

8    Q    Okay.  And we'll get to that in a moment, but --

9             MR. CARISSIMI:  You can take that down,

10   Agent O'Reilly.  Okay.

11   BY MR. CARISSIMI:

12   Q    Mr. Zhang, I'd like to direct your attention to

13   November 20th, 2019, at about 7:00 in the morning.

14   Were you working that day?

15   A    Yes.

16   Q    What were you doing?

17   A    I was trying to clean up a few things and I was

18   right outside the door trying to clean the ground.

19   Q    Were you outside the door to the laundromat?

20   A    I was just inside the door.

21   Q    And is 7:00 the normal time that you open the

22   store?

23   A    Yes, back then we opened at 7:00 usually.

24   Q    And what specifically were you doing?

25   A    I was sweeping the floor and I was trying to wipe

Mr.         - Direct                    189

1  down the washers.

2  Q    And what happened while you were trying to clean?

3  A    One -- so this one person entered the store and

4  greeted me.

5  Q    Where did the man go?

6  A    So this person entered the store and greeted me

7  and then said a few things to me I -- that I couldn't

8  understand.  And then he started to push me further

9  into the store.

10  Q    Can you describe what the man was wearing?

11  A    He was wearing very dark clothing.  I wasn't

12  certain if it was black, but very dark.

13  Q    Were you able to see his face?

14  A    I don't -- I don't -- I'm not certain.

15  Q    Okay.  Could you tell what race the man was?

16  A    I remember -- I remember he was of a darker skin

17  color, but I really couldn't say the race.

18  Q    Okay.  What happened after he started pushing you

19  into the store?

20  A    Okay.  So he started pushing me further into the

21  store, and within seconds, I didn't even know where

22  they came from, but two other guys were just like

23  right around me, and all three of them started to

24  pushing me and shoving me.  And I -- someone pointed

25  a gun at me, and so I started screaming on the top of

## CERTIFICATE OF SERVICE

Thomas A. Dreyer, Esquire hereby certifies that he served true and correct copies

of the foregoing Defendant Willie Singletary's' Sentencing Memorandum upon the persons

listed below on the date listed below by first class mail, postage prepaid

> Anthony J. Carissimi, Esquire
> Jeanette Kang, Esquire
> Assistant United States Attorneys
> 615 Chestnut Street
> Suite 1250
> Philadelphia, PA  19106
>
> Cafrolyn M. DeMayo
> U.S. Probation Officer
> Federal Building
> Suite 2400
> 600 Arch Street
> Philadelphia, PA  19106

> **/s/ Thomas A. Dreyer**
> Thomas A. Dreyer, Esquire
> 30 Running Brook Road
> Glen Mills, PA  19342
> 610-742-7883
> Attorney for Defendant Willie
>                     Singletary

Dated:   December 31, 2024